UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-519-GWU

JANE D. STURGILL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

* * * * * * * *

The plaintiff appeals an administrative decision to terminate Social Security Income (SSI) and Disability Insurance Benefits (DIB) benefits originally awarded in 2001. The case is currently before the Court on cross-motions for summary judgment.

         **STANDARDS APPLICABLE TO TERMINATION DECISIONS**

When the issue is the termination of benefits, the regulations establish the following eight-step test:

1. Is the beneficiary engaging in substantial gainful activity? If so, then the disability will be found to have ended. See 20 C.F.R. Section 404.1594(f)(1).

2. Provided the beneficiary is not engaged in substantial gainful activity, does the beneficiary have an impairment or combination of impairments which meet or equal the severity of impairments in the Listing? If so, then the disability must be found to continue. See 20 C.F.R. Section 404.1594(f)(2).

3. If the beneficiary does not equal a listing, then the question is

1

whether there has been medical improvement (any decrease in the medical severity of one's impairments, as per 20 C.F.R. 404.1594(b)(1)).

4. Provided medical improvement has occurred, then the question is whether this has produced an increase in the residual functional capacity. If the improvement is not related to the ability to perform work activities, then one proceeds to step 5. If the improvement is related to work ability, then one proceeds to step 6. See 20 C.F.R. Section 404.1594(f)(4).

5. Provided there has been no medical improvement or the improvement is not related to work ability, then one must decide whether an exception to the medical improvement standard will apply. If not, then a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(5).

6. If the medical improvement is found to be related to work ability or if an exception to the medical improvement standard applies, then one considers whether the current impairments in combination are severe. If so, then one proceeds to step 7; if not, the beneficiary is no longer considered disabled. See 20 C.F.R. Section 404.1594(f)(6).

7. If the impairments are found to be severe, then one must assess the beneficiary's ability to engage in substantial gainful activity in accordance with 20 C.F.R. Sec. 404.1561. If found capable of performing past relevant work, then the disability will be found to have ended. Otherwise, one proceeds to step 8. See 20 C.F.R. Section 404.1594(f) (7).

8. Provided the beneficiary cannot perform past relevant work, then one must assess the residual functional capacity and considering the age, education, and past work experience, determine whether other work can be performed. If so, then the beneficiary is no longer disabled. Otherwise, a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(8).

The standard for judicial review is whether there is substantial evidence to

support the Secretary's decision that the plaintiff's condition has improved to the extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. Id. at 1148.

## DISCUSSION

The plaintiff, Jane D. Sturgill, was found to be disabled in an initial level determination on September 17, 2001, with an onset date of November 23, 2000, due to impairments consisting of chronic pulmonary insufficiency and "valvular heart disease or other stenotic defects." (Tr. 417). Mrs. Sturgill's condition was found to meet the Commissioner's Listing of Impairment (LOI) 3.02A, captioned "Chronic pulmonary insufficiency." A pulmonary function test on May 7, 2001, had shown an FEV1 of only 1.02 liters following the use of bronchodilators, while 3.02A provides for a finding of disability when an individual of the plaintiff's height of 67 inches has an FEV1 of 1.35 liters or less. (Tr. 342).

Upon review in 2005, a disability hearing officer determined that the plaintiff's condition no longer met LOI 3.02A, based on a pulmonary function test conducted by Dr. Robert Hoskins on March 23, 2005, which showed an FEV1 of 2.108 liters. (Tr. 59, 351). The plaintiff appealed to an Administrative Law Judge (ALJ), who reviewed the evidence and determined that Mrs. Sturgill continued to have "severe"

impairments due to chronic pulmonary insufficiency and valvular heart disease, but that medical improvement had occurred and the Listing was no longer met. (Tr. 15-16). The ALJ also determined that the plaintiff did not develop any additional impairments through May 1, 2005. In order to carry the Commissioner's burden of showing that the plaintiff was able to engage in substantial gainful activity, the ALJ obtained testimony from a Vocational Expert (VE) at an administrative hearing. The hypothetical factors submitted to the VE included a restriction to "light" level exertion, with the option of sitting and standing at 30 minute intervals, and also contained the following non-exertional impairments. (Tr. 459). She: (1) could not climb ladders, ropes, or scaffolds; (2) could only occasionally stoop, bend, squat, crouch, or crawl; (3) could not be exposed to temperature extremes, hazardous machinery, or pulmonary irritants such as smoke, dust, fumes, chemicals, and noxious gases; and (4) would be restricted to low stress work. (Tr. 459-60). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

     On appeal, the plaintiff asserts that there was not substantial evidence to support a determination that the plaintiff's ability to work had improved, and that the ALJ erred in failing to find her morbid obesity to be an additional impairment preventing her from participating in substantial gainful activity.

06-519 Sturgill

The evidence reflecting medical improvement in the plaintiff's breathing capacity is somewhat mixed. As the ALJ correctly noted, Dr. Hoskins conducted a pulmonary function test in 2005 that showed a capacity much greater than the 2001 test. Dr. Hoskins, a one-time examiner, also conducted a general physical examination, although apparently some portions of his narrative report, particularly regarding the musculoskeletal examination, were incomplete. (Tr. 346). However, he concluded that the pulmonary function test showed mild airway obstruction, and essentially limited the plaintiff's activities, based on what he referred to as musculoskeletal limitations, which would not "clearly exclude light lifting, carrying or some bending, squatting, crawling, climbing or balancing." (Tr. 347). He added that given the plaintiff's "lung status," she might have difficulty working around fumes, dust, smoke, or extreme temperatures. (Id.). A state agency reviewing physician, Dr. H.T. Anzures, reviewed the evidence at this point and listed restrictions consistent with Dr. Hoskins. (Tr. 387-93). These restrictions were accommodated in the hypothetical question. On the other hand, as the plaintiff points out, Dr. S. Chatterjee, apparently a treating cardiologist, examined the plaintiff subsequently, on May 25, 2005, and, while noting normal respiratory with symmetrical lung expansion, also found diminished breath sounds. (Tr. 383). Dr. Chatterjee did not conduct pulmonary function testing but, noting the plaintiff's complaints of shortness of breath on minimal exertion, wrote that she continued to be disabled because of

06-519 Sturgill

morbid obesity, shortness of breath on minimal exertion, and past heart surgery. (Tr. 383-4).

While there is some conflict in the evidence regarding improvement in the plaintiff's breathing, Dr. Hoskins conducted the only recent testing and, as the defendant notes, the plaintiff apparently did not complain of shortness of breath on minimal exertion to her treating family physician, Dr. Ashu Joshi, between 2002 and 2005. (Tr. 358-79). Even if Dr. Chatterjee was clearly entitled to the deference given to a long-term treating source, his opinion would have to be supported by some objective evidence. Other than a finding of diminished breath sounds on the left, no objective findings were cited. Thus, the ALJ could reasonably have determined that there had been medical improvement in the plaintiff's breathing capacity related to her ability to work.

However, the plaintiff's arguments regarding the evaluation of her obesity have merit. At her initial visit to Dr. Joshi in February, 2002, Mrs. Sturgill's weight was noted to be 232 pounds, but by April, 2004, it had risen to 266 pounds. (Tr. 374, 378). Dr. Joshi noted that this resulted in a body mass index (BMI) of 44.3. (Tr. 374). Social Security Ruling 02-01p, titled "Evaluation of Obesity," notes that a BMI equal to or greater than 40 has been designated by the National Institutes of Health as reflecting "extreme obesity, which represents the greatest risk for developing obesity-related impairments." SSR 02-01p, p. 2. The ruling goes on to

6

say that the extent of obesity does not correlate with the degree of functional loss, but that the Commissioner would find obesity to be a "severe" impairment when, either alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities. Id., p. 4. Moreover, the Commissioner is required to explain to the claimant how he reached his conclusions on whether obesity caused physical or mental limitations. Id., p. 7.

In the present case, Dr. Joshi's records show that the plaintiff's weight continued to be elevated, and was 259 pounds in May, 2005. (Tr. 358). Her weight was 257 pounds when examined by Dr. Chatterjee the same month (Tr. 381), and as previously noted, the physician had cited "morbid obesity" as one of the grounds for concluding that she continued to be disabled. (Tr. 384). Dr. Hoskins was the examining source upon whom the ALJ largely relied, but he described restrictions based on "musculoskeletal dysfunctions" and added that obesity would "further limit activities." (Tr. 347). This implies that he viewed restrictions due to obesity as being in addition to the limitations previously given. Dr. Anzures, the reviewing source, did not specifically discuss this issue, although he noted the plaintiff's weight. (Tr. 388).[1] The ALJ's decision contains only a passing reference to obesity,

---

[1] In a recent decision, the Sixth Circuit criticized the Commissioner for failing to detail the effects of a plaintiff's obesity in a termination case, noting that the effects of obesity on her physical functioning should have been evaluated and citing SSR 02-01p.

7

06-519 Sturgill

and does not evaluate its impact on the claimant's functioning. (Tr. 16).

The decision will be remanded for further evaluation of the effect of the plaintiff's obesity on her ability to function.

This the 26th day of September, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

Kennedy v. Commissioner of Social Security, No. 06-6582 (6th Cir., Sept. 7, 2007), slip op. at 12. The Sixth Circuit noted that the Commissioner conceded "that evaluation of obesity requires an individualized assessment of the impact of obesity on an individual's functioning, and that obesity is properly assessed by its actual impact on other systems through increased functional limitation." Slip op. at 13 (internal quotation marks omitted). While Kennedy had originally been found to have a "severe" impairment due to obesity, in contrast to the present case, the same evaluation would appear to be required in the present case since the plaintiff was diagnosed with either obesity or morbid obesity by all recent examining sources.